HENRY, Chief Judge,
concurring.
I concur in my colleagues’ fine opinion, but write separately to remind the Counties and the BLM of another avenue that is open to them.
I agree with the majority that the Counties have failed to allege a concrete and particularized injury stemming from BLM’s adoption of the Management Plan. In their complaint, the Counties have not identified any specific rights-of-way they contend have been infringed by the Plan. The district court, which we affirm, held that “[a] road closure affecting a specific route claimed to be an R.S. 2477 right-of-way invites a protest, an administrative appeal, or the commencement of a civil action.” Dist. Ct. Op. at 21. Nothing in today’s opinion precludes such a particularized challenge.
In a challenge such as the one the Counties launched here, depending on the procedural context, entities claiming infringement of their established rights-of-way may be entitled to invoke the protections of the Federal Land Policy Management Act of 1976 (FLPMA), which provides that “all actions by the Secretary concerned under this Act shall be subject to valid existing rights.” Pub.L. No. 94-579, § 701(h), 90 Stat. 2743, 2787, reprinted in 43 U.S.C.A. § 1701 historical note (“Savings Provisions”). The federal agency is not entitled, under the FLPMA and the Administrative Procedures Act (APA), to close existing county roads asserted to be R.S. 2477 rights-of-way without a reasoned and nonarbitrary basis for doing so, such as an administrative determination, based on substantial evidence, that the asserted right-of-way is invalid or that the claim exceeds the scope of an acknowledged right-of-way. See SUWA v. BLM, 425 F.3d 735, 757 & n. 12 (10th Cir.2005) (noting that administrative determinations regarding R.S. 2477 claims are used for “land-use planning purposes” and citing as an example a Department of Interior decision requiring an administrative determination in advance of closing a road claimed to be an R.S. 2477 right-of-way).
Specifically, we encouraged and outlined an interactive process that is required to put matters at issue:
[W]hen the holder of an R.S. 2477 right of way across federal land proposes to undertake any improvements in the road along its right of way, beyond mere maintenance, it must advise the federal land management agency of that work in advance, affording the agency a fair opportunity to carry out its own duties to determine whether the proposed improvement is reasonable and necessary in light of the traditional uses of the rights of way as of October 21, 1976, to study potential effects, and if appropri *1091 ate, to formulate alternatives that serve to protect the lands. The initial determination of whether the construction work falls within the scope of an established right of way is to be made by the federal land management agency, which has an obligation to render its decision in a timely and expeditious manner. The agency may not use its authority, either by delay or by unreasonable disapproval, to impair the rights of the holder of the R.S. 2477 right of way. In the event of disagreement, the parties may resort to the courts.
Id. at 748 (footnotes omitted) (emphasis supplied).
As noted, these administrative determinations are not binding, and may be challenged in court on a de novo basis. Id. at 757-58. Such a determination, though not final or binding, is the first step in what this court called the system of “coordination” and “mutual accommodation” required of the holder of an easement and the owner of a servient estate. Id. at 746-48. It is inconsistent with this system for one party — whether it is the County or the BLM — to make unilateral changes in the status quo without first considering the legitimate interests of the other. See id. at 749 (“ ‘Bulldoze first, talk later’ is not a recipe for constructive intergovernmental relations or intelligent land management.”). This necessarily requires the parties to make a reasoned determination regarding the existence and scope of the claimed easement, and the “reasonableness and necessity” of any changes, id. at 746-47, subject to judicial review in accordance with the APA and other law.
If the agency concludes that no valid right-of-way exists or that the County’s assertion of rights exceeds the scope of any easement, it may be necessary for the federal agency to bring a trespass action or the County to bring a claim under the Quiet Title Act. The APA requires only that the agency act in a manner that is not arbitrary and capricious — such as disregarding undisputed rights-of-way or infringing asserted rights-of-way without a reasoned basis for doing so. It does not afford the claimant an opportunity for ultimate resolution of a genuinely disputed property claim against the United States. That is the province of the Quiet Title Act. If the parties follow the procedures entailed by Utah property law and explained by this court in SUWA, in a “spirit of mutual accommodation,” Restatement (Third) of Property: Servitudes, § 4.10 cmt. a (1998), quoted in SUWA, 425 F.3d at 748, we suspect that many disputes will be resolved informally and amicably, as they have been for decades.
At oral argument, we delved into whether or not the “SUWA process” was a precondition to litigation, and whether the parties have “tried to work it out.” The Counties responded that they had tried, and that “letters have been written and there’s no response [from BLM].” Similarly, BLM read the SUWA opinion to instruct “that the parties ought to consult and try and work it out before coming to court.” BLM’s view at oral argument was that it has “tried to do that.”
In its brief, however, BLM maintained that, because of the vague and undeveloped nature of the Counties’ claims, we should “requir[e them] to either follow the process described in SUWA v. BLM, 425 F.3d at 746, or bring quiet title actions.” Aple’s Br. at 16-17. Either option “would permit further factual development necessary for the proper resolution of R.S. 2477 issues.” Id. at 17. I find BLM’s stance at oral argument difficult to square with BLM’s brief. In any event, it seems to me that the parties have not complied with the spirit of the interactive process outlined in SUWA.
*1092 Both parties need to utilize the “system of coordination” we described there, SUWA, 425 F.3d at 746, via “consultation, communication, and cooperation ... with [the] ... counties.” [1] See March 22, 2006 Memorandum from the Secretary of the Department of the Interior, at 5 (quoting in part SUWA, 425 F.3d at 748).
The American West is a looming space, and the history of its pioneers’ tangled relationship with Washington bureaucrats, and the resulting animosity, still looms large. The historian Bernard DeVoto summed up the traditional Western attitude toward the federal government as “[G]et out and give us more money.” See Bernard DeVoto, The West Against Itself, 194 Harper’s Magazine 1-13 at 8 (January 1947). Devoto’s bon mot should not be misunderstood: it recognized merits and equities on both sides. As litigation is expensive and times are hard, SUWA’s practical advice should be heeded; additionally, if it is not heeded, an action might not be ripe for adjudication.
Thus, while the Counties are not entitled to challenge the Management Plan on the basis of the generalized claims they set forth in this complaint, by raising specific cases under SUWA’s rubric, they have ample opportunities to obtain reasoned consideration of any particularized claim they may have that road closures and restrictions in the Monument violate FLPMA’s guarantee of valid existing rights.

. This process is based on Utah law. See SUWA, 425 F.3d at 748 (citing Utah Code Ann. § 72-5-303 and the Restatement (Third) of Property: Servitudes, § 4.10 cmt. a (1998)).